In re SOLAR ENERGY SALES AND SERVICES, INC., Bankrupt.

Kenneth A. RUSHTON, Trustee,

v.

DEAN EVANS CHRYSLER–PLYMOUTH, First Security Bank of Utah, N.A., and Larry D. Lilly, Defendants.

FIRST SECURITY BANK OF UTAH, N.A., Third-Party Plaintiff,

v.

Wilford Gene HESS, Third-Party Defendant.

In re Abel Charles ALVILLAR, Jr., Bankrupt.

Harriet E. STYLER, Trustee, Plaintiff,

v.

UTAH STATE EMPLOYEES CREDIT UNION, a corporation, Defendant.

Bankruptcy Nos. B–78–01291, B–79–00603.

United States Bankruptcy Court, D. Utah, Central Division.

June 2, 1980.

Kenneth Rushton, Lehi, Utah, pro se as plaintiff-trustee.

Patrick B. Nolan, Provo, Utah, for defendant and third-party plaintiff First Sec. Bank.

Nick Colessides, Salt Lake City, Utah, for defendant Dean Evans Chrysler-Plymouth.

Ralph C. Amott, Orem, Utah, for third-party defendant Wilford Gene Hess.

Harriet E. Styler, Salt Lake City, Utah, pro se as plaintiff-trustee.

Dale R. Kent, Salt Lake City, Utah, for defendant Utah State Emp. Credit Union.

## MEMORANDUM DECISION AND ORDER

RALPH R. MABEY, Bankruptcy Judge.

These cases come before the Court on a similar issue: whether, despite failure to comply with the perfection requirements of Utah Code Ann. §§ 41–1–80 *et seq.*, defendants hold valid, equitable liens on certain motor vehicles. The Court earlier interpreted the equitable lien doctrine of this jurisdiction in *In re Humphries*, No. B–78–00342 (D.Utah October 1, 1979), which was based, in part, upon *Commerce Bank v. Chambers*, 519 F.2d 356 (10th Cir. 1975).

### *In re Solar Energy Sales and Service, Inc.*

The case of *In re Solar Energy Sales and Service, Inc.* was tried on October 30, 1979. No appearance was made on behalf of defendant Larry D. Lilly although the Court found him to have been properly served with process. Accordingly, at the conclusion of the trial and on request of First Security Bank of Utah (First Security Bank or the bank), the Court granted a default judgment against Larry D. Lilly on First Security Bank's cross-claim. The facts presented at trial and by stipulation are as follows.

On or about March 30, 1978, Larry D. Lilly, as an officer of the bankrupt corporation, purchased a car for the bankrupt corporation from Dean Evans Chrysler-Plymouth (Dean Evans). Mr. Lilly executed an Installment Sale and Security Agreement for and on behalf of the corporation. Defendant Wilford Gene Hess cosigned the agreement. This purchase was made and the document was signed in the name of Solar Energy Marketing & Maintenance, Inc. Incorporation under this name was subsequently refused by the State of Utah, presumably because of a conflict with a similar registered name. Thereafter, the company incorporated under the name of Solar Energy Sales and Service, Inc. (Solar Energy or the corporation), the bankrupt herein.

Dean Evans Chrysler-Plymouth subsequently assigned the Installment Sale and Security Agreement to First Security Bank pursuant to the terms of a Dealer Reserve Agreement entered into by Dean Evans on May 31, 1972. First Security Bank paid Dean Evans the full purchase amount under the contract on April 11, 1978. By terms of the Dealer Reserve Agreement, it was the dealer's responsibility to have a new certificate of title issued with the bank's lien noted thereon. From the evidence in this case, it appears that through some inadvertence on the part of Dean Evans, the lien of the assignee, First Security Bank, was never noted on the proper documents required to be submitted to the state,

and thus, when a title certificate was issued, no lien was shown thereon.

The Bill of Sale was not introduced into evidence, but the application for the certificate of title, which is in evidence, shows no lienholder on the vehicle. This application was dated March 29, 1978, approximately the same time the vehicle was purchased. Presumably the lienholder was also omitted from the Bill of Sale which resulted in the issuance of a clean certificate of title. No evidence was submitted to suggest that the omission of the lien from the certificate of title was the fault of the Utah Motor Vehicle Division. Therefore, it is reasonable to conclude that it was through the inadvertence or error on the part of Dean Evans, which prepared the documents, that the lien was not noted on the submitted documents.

It is the practice of the Motor Vehicle Division of the Utah State Tax Commission to mail the certificate of title to the lien holder, if one is noted thereon, or to the owner, if no lienholder is shown. It was testified at trial that 90 days after the sale of the vehicle, Mr. Ted Stromness, an employee of the bank who serviced the loan, pulled the loan file to do a follow-up and to check on the certificate of title. Finding that no title certificate had been sent to the bank, Mr. Stromness contacted both the secretary and sales manager of Dean Evans and advised them of the problem. They promised to remedy the omission and have a corrected certificate of title issued. Communications continued through the next several months between Mr. Stromness and the employees of Dean Evans, who each time reassured him that the problem was being worked on and would be corrected. The bank did not communicate with Solar Energy or its officers or with the Utah Motor Vehicle Division in an attempt to correct the problem itself during this period, but rather delegated all responsibility for correct recordation of its lien to the dealer pursuant to the terms of the Dealer Reserve Agreement.

Finally, the bank contacted Mr. Lilly and demanded return of the certificate of title. Mr. Lilly surrendered the title certificate to the bank about November 24, 1978. The bank requested Mr. Lilly to sign over the certificate of title on behalf of the corporation, but he refused. The bank claims the refusal was based on Mr. Lilly's allegation that the vehicle was experiencing problems. However, uncontroverted testimony was given by Mr. Potter, the Vice President of the corporation at the time the bankruptcy was filed, that Mr. Lilly had been removed as an officer and director of the corporation on October 2, 1978, and thus, would have had no authority to sign over the certificate of title on behalf of the corporation at the time this was requested. No evidence was offered to show that First Security Bank ever contacted any current officers of the bankrupt corporation to aid in the reissuance of the certificate of title. The testimony showed, however, that the vehicle was bought for corporate purposes, that the payments were made by the corporation, and that the vehicle belonged to the corporation. The employees at the bank also testified that they knew they were dealing with a corporation, and not an individual. Subsequently, on December 20, 1978, Solar Energy filed its petition in bankruptcy.

The matters which transpired subsequent to the filing of the bankruptcy, although not pertinent to the question of an equitable lien, have bearing on the further issue of liability for loss in case equitable perfection of the security interest is denied. These issues of ultimate liability for loss have been properly included in this action by cross-claims and by a third-party complaint. For purposes of continuity, these additional facts are now set out as follows.

Mr. Rymus, the Collections Division Supervisor of First Security Bank, attended the First Meeting of Creditors for Solar Energy which was held on January 17, 1979, where he requested the trustee to disclaim any interest in the vehicle. This request was denied. He was given permission, however, to repossess the vehicle, but was instructed by the Court not to dispose of the vehicle. Payments on the vehicle were current through January, 1979, two payments having been made on December 4, 1978

before the filing of bankruptcy. Thus, the contract did not fall into default until February 13, 1979. On March 29, 1979, Dean Evans signed a hold harmless agreement addressed to First Security Bank in which it agreed specifically to indemnify and hold harmless the bank on any losses occasioned from the attempted collection of the vehicle from Solar Energy. After locating the vehicle, it was repossessed on April 24, 1979, and was returned to Dean Evans on May 15, 1979. Demand was then made by the bank on Dean Evans for payment under the Reserve Agreement, but Dean Evans denied liability and refused payment.

Mr. Anderson, an employee of First Security Bank, talked with the third-party defendant, Wilford Gene Hess, on June 1, 1979. At that time, Mr. Hess asked that his name be removed from the contract as he had signed only on behalf of the corporation. This request was refused, the bank informing Hess of its claim of personal liability against him.

A complaint was filed by the trustee in this case on June 19, 1979, against Dean Evans, First Security Bank and Larry D. Lilly. The trustee asked for a determination of the validity of the various claims to the property as against the trustee, an order directing Dean Evans to turn over the vehicle to the trustee, and an order allowing the sale of the vehicle free and clear of liens with any valid liens attaching to the proceeds. First Security Bank answered the trustee's complaint and further complained against Dean Evans, Larry D. Lilly and Wilford Gene Hess to the effect that if the trustee prevailed over First Security Bank's lien, these parties were liable to First Security Bank for the loss. At two pre-trial conferences held with the parties, it was stipulated that the vehicle could be sold free and clear of liens with all valid claims attaching to the proceeds. It was further agreed that all claims, including the cross-claims and third party claims, would be tried at the same time as all arose out of the same set of facts.

## In re Alvillar

This case was submitted to the Court by motion, affidavit and memorandum. The facts of the case appear as follows.

On or about April 11, 1978, defendant, Utah State Employees Credit Union (credit union or defendant), loaned the sum of $1,985 to the bankrupt, Alvillar, to enable him to purchase a 1974 Harley Davidson motorcycle. A security agreement was executed by the bankrupt at the same time wherein he granted the defendant a security interest in the motorcycle. The defendant apparently supplied the bankrupt with all of the documents necessary to obtain a certificate of title with its lien noted thereon, including the properly endorsed former certificate of title and two separate checks, one in the amount of $1,895 to cover the purchase price, and one totaling $90 to pay the personal property tax on the vehicle, a prerequisite to the obtaining of a new certificate of title. Although the bankrupt was supplied these documents and fees, he never submitted them to the Utah Motor Vehicle Division, and thus a new certificate of title with notation of the credit union's lien was never issued.

Several attempts were apparently made by the credit union to contact the bankrupt: once in June and once in August of 1978, then once in March and once in May of 1979. The bankrupt never answered any of the correspondence, nor was any personal contact ever made with him. The bankrupt had arranged payments to be deducted directly from his check and paid over to the credit union. This continued until approximately February 1979, when he instructed his employer to cease the deductions. Mr. Alvillar subsequently filed bankruptcy on May 18, 1979.

On July 25, 1979, the trustee filed a complaint seeking to have the credit union's lien declared null and void against the trustee as an unperfected lien. Subsequent to the filing of an answer and the convening of a pre-trial conference, on November 26, 1979, the trustee moved for summary judgment. This motion was based on interrogatories filed in the case, and affidavits from the

bankrupt and Irene Clark, an employee of the Motor Vehicle Division of the Utah State Tax Commission. In essence, Irene Clark said that the Motor Vehicle Division does not require that the new owner personally apply for the new title certificate. The Division allows creditors to present the documents and upon payment of the required fees and taxes, obtain the new certificate of title. Further, she stated that the Motor Vehicle Division frequently provides blank applications to lending institutions to aid in this process. The affidavit of the bankrupt reaffirmed the facts previously set out. Defendant responded to the motion by memorandum. The trial date for the case was stricken upon a stipulation that the matter could be decided on summary judgment, and, in the event summary judgment was denied, the action would be dismissed upon the payment of costs to plaintiff by defendant in the amount of $101.

Having set out the facts of the foregoing cases, the Court now reaches the issue of whether, in each of the circumstances before the Court, the creditor, despite its failure to comply with the requirements of Utah Code Ann. §§ 41–1–80 et seq., is entitled to have its lien deemed perfected against the trustee in bankruptcy under the equitable exception of *In re Humphries, supra*, which was based upon the opinion of *Commerce Bank v. Chambers, supra*. As stated, although other issues arise in the *Solar Energy* case, these will be addressed following consideration of the common question raised in this opinion. As application of the equitable exception now at issue is entirely dependent on the factual and ultimately equitable circumstances of each individual case, each situation must be analyzed separately on its own facts.

### The Humphries Exception: A Review

To further understanding of the Court's opinion today, an initial review of the *Humphries* and *Commerce Bank* cases is appropriate. The case of *Commerce Bank v. Chambers, supra*, was appealed from the United States District Court for the District of Kansas and was decided under a Kansas statute similar to the one presently in force in Utah. Although little factual detail is given, the opinion indicates that the creditor had properly noted its lien on the Bill of Sale. The purchasers had apparently never submitted the proper documents and had never paid the required fees, including personal property tax, so the Certificate of Title had not been issued by the time the purchasers filed a petition in bankruptcy. It is intimated that not only was the purchaser required by the state statute to submit all necessary documents and apply for title, but that such application could not be made by one other than the purchaser. The Court specifically rejected the argument, accepted by the District Court, that the creditor could have protected itself by having the purchasers designate it as their agent for purposes of making application for title. Based upon its conclusions that the creditor in that case had done all reasonably required of it under the circumstances to perfect its lien and that third parties were not prejudiced by such a holding, the Court found an equitable exception to the statutory requirements of perfection such as to render the lien valid as against the trustee in bankruptcy.

The case of *In re Humphries, supra*, was decided by this Court under applicable Utah law. In that case, the creditor had not only properly noted its lien on the Bill of Sale, but had actively participated in several attempts to get the certificate of title issued. The creditor kept control of the necessary documents available to it and submitted these documents to the Motor Vehicle Division and to other parties on several occasions to induce cooperation on the part of the bankrupt to complete registration and title issuance. Apparently, the bankrupt never paid the personal property tax on the vehicle and thus issuance of a new certificate of title was thwarted, The Court held that the creditor had done all it could reasonably do under the circumstances to insure issuance of a proper certificate of title, and, as third parties were not prejudiced, the Court found that the creditor was entitled to an equitable lien as against the trustee in bankruptcy.

*The Humphries Exception: In re Solar Energy Sales and Service, Inc.*

■ An analysis of the facts of the *Solar Energy* case and a comparison of those facts with the situations found in *Humphries* and *Commerce Bank* lead the Court to conclude that the creditor in this case, First Security Bank, is not entitled to the benefits of the equitable exception enunciated in those cases. Therefore, as First Security Bank failed to comply with the perfection requirements of Utah Code Ann. §§ 41–1–80 *et seq.*, its lien stands unperfected and thus void as against the claim of the trustee in bankruptcy.

■ A principal issue in determining the existence of an equitable lien under *Commerce Bank* and *Humphries* is whether the creditor has done all it reasonably can do to perfect its lien, but nevertheless is thwarted by the uncooperativeness of the debtor. In studying the facts of this case, it becomes apparent that the omission of the bank's lien on the certificate of title resulted not from the uncooperativeness of the bankrupt, but from error on the part of Dean Evans Chrysler-Plymouth, to which the bank had delegated the responsibility of perfecting its security interest. The facts show, in contrast to the facts of *Commerce Bank* and *Humphries*, that with the cooperation of the bankrupt, a new certificate of title was in fact issued. The lien was simply not noted on this issued certificate. This omission was not the fault of Solar Energy, but apparently resulted from the fact that the lien had not been noted on the original documents which were required to be submitted to the state for issuance of a new title. This is not a case where the debtor impeded attempts to get a new certificate of title issued, nor is it a case where the debtor fraudulently or otherwise deliberately caused the omission of the security interest from the certificate of title. The presence of an uncooperative debtor is not a significant contributing factor to the bank's failure to perfect under Utah Code Ann. §§ 41–1–80 *et seq.* in this case.

Neither does the situation presented reveal the diligent creditor found in the *Humphries* case. Here the bank not only did not do all that it could have, it had almost no contact with the transaction at all, delegating all of the responsibility for perfection to Dean Evans. The testimony shows that the bank relied completely on Dean Evans to submit correctly the documents, making no immediate follow-up of its own. Even after the certificate of title was incorrectly issued without the lien notation, the bank made little effort on its own to protect itself. Instead, the bank instructed Dean Evans to remedy the error, which Dean Evans promised to do, but never accomplished. This course of dealing persisted for several months, the bank never having or attempting any contact with the corporation itself. Finally, in November, nearly eight months after the sale of the vehicle, the bank contacted Mr. Lilly and demanded return of the incorrectly issued certificate of title. The certificate of title was handed over to the bank, but Mr. Lilly refused to endorse the title which he had originally signed on behalf of the corporation. The apparent reason for this refusal to affix his signature was based on the fact, confirmed during trial through the testimony of Mr. Potter, that Mr. Lilly had been removed as an officer and director of Solar Energy and no longer had the authority to sign on the corporation's behalf. The bank then held the title certificate for a month before the corporation filed bankruptcy without attempting to contact any other officer of the corporation to aid in the process of reissuance. Thus, the failure to perfect cannot be blamed on an uncooperative debtor, but must be carried by the bank itself and its delegated agent, Dean Evans. The mistake as to perfection was originally made by Dean Evans, and the bank apparently sought to protect itself from loss not by contact with the corporation itself to insure a properly issued certificate of title, but by making Dean Evans responsible for perfection of its interest or for its loss if Dean Evans failed to protect its lien against superior rights of third parties.

This case also presents a factual and equitable dissimilarity to the *Commerce Bank*

and *Humphries* cases as concerns the potential harm to innocent third parties. In both *Commerce Bank* and *Humphries*, the lien was properly noted on the Bill of Sale, but because of uncooperativeness on the part of the debtor, a new certificate of title was never issued. Since the lien was noted on the Bill of Sale, which must be presented to the Motor Vehicle Division for the issuance of a certificate of title, any transfer of the vehicle and request for title would—absent fraud—have resulted in the issuance of a certificate with the lien notation upon it. Thus, third party transferees would be imparted notice of the outstanding obligation as would creditors wishing to levy on the vehicle who inspected the title.

In this case, however, there is no incomplete perfection of the creditor's lien on account of a failure to submit the documents and fees to the proper authority. Rather, there exists an aborted attempt to perfect based on a failure to note the lien on the submitted documents. Thus, a certificate of title was issued, absent any fraud, which failed to note the existence of the creditor's lien. In this case, third parties are imparted no notice of an outstanding obligation, but are rather left to rely on an apparently unencumbered certificate of title. The equities, then, between the creditor and third parties, differ from the situations found in *Humphries* and *Commerce Bank*, and are, in the present situation, weighted towards protection of innocent third parties.

A case similar in facts and equities to the present case was decided by the Kansas District Court in *In re Kern*, 443 F.Supp. 219 (D.Kan.1977). The rationale of the Kansas Court closely parallels our own and provides a persuasive precedent for the Court's decision today. In that case, since a clean certificate of title was issued apparently because of the failure of the creditor to have its lien noted on the Bill of Sale, the Court held for the trustee and denied equitable perfection, claimed under the *Commerce Bank* rationale, to the creditor. Noting the failure of the creditor to do all it could have by omitting notation of its lien from the Bill of Sale, the Court also put

great emphasis on the effect the issuance of a clean certificate of title had on third parties:

> The key factor here seems to be potential harm to innocent third parties. If a purchaser simply fails to apply for a Certificate of Title, as in *Littlejohn* [*Commerce Bank*], then it is difficult to see how any harm can befall innocent third parties. The purchasers could not transfer title without a valid Certificate of Title. In addition, without seeing a valid Certificate of Title that did not list any liens, no creditor could levy upon the car and be assured that the car was not already encumbered. However, if the lienholder fails to have its lien noted on the Bill of Sale, and a Certificate of Title therefor issues without notation of the lien, the potential damage to subsequent purchasers or creditors is great. *Id.* at 221.

This potential harm to third parties, when added to the prior observations of the Court, clearly sets this case apart from both the *Humphries* and *Commerce Bank* cases, and thus, the Court now holds that First Security Bank of Utah is not entitled to the benefits of the equitable exception to Utah Code Ann. §§ 41–1–80 *et seq.* The lien stands unperfected against the trustee in bankruptcy, and the bank's claim is an unsecured claim on the estate.

### The Humphries Exception: In re Alvillar

■ The case of *In re Alvillar* presents a closer question of equitable perfection. In this case, the creditor made a more determined effort to perfect its lien, and the uncooperativeness of the debtor contributed in part to the failure to perfect. Nevertheless, this case is also distinguishable from the *Humphries* exception, and thus, the creditor here cannot rely upon the equitable exception to Utah Code Ann. §§ 41–1–80 *et seq.*

As noted earlier, one of the main factors considered in the *Humphries* and *Commerce Bank* opinions was the creditor's effort to perfect its lien. Maximum effort on the part of the creditor is a necessary element

to the finding of an equitable exception. The exception is available only to those who were unfairly denied statutory perfection through no fault or lack of effort on their own. *See In re Humphries, supra.* Although the credit union here went a step further than most lenders by loaning to the bankrupt, in addition to the purchase price, the money to pay his personal property taxes on the vehicle, it could have done more under the circumstances to insure that its lien was properly perfected. Since it was loaning the money for the personal property tax anyway, and since it held or easily could have held all of the necessary documents to apply for the issuance of a certificate of title, including the properly endorsed previous certificate of title, the credit union had it within its power to submit the necessary documents and fees to the Utah Motor Vehicle Division to insure perfection of its lien. Instead, it handed all of the documents and fees over to the bankrupt and relied upon him to finish the process.

These facts are in contrast to the creditor in *In re Humphries, supra,* who submitted whatever documents it could to the Utah Motor Vehicle Division, but was unable, even after repeated contacts with the bankrupt, to get the bankrupt to pay his personal property tax so that the process of title issuance could be completed. This situation is also different from the *Commerce Bank* case where the court was concerned about imposing too great of a burden on the creditor to insure the issuance of a certificate of title. In that case, as in the *Humphries* case, the failure to perfect resulted from the failure of the debtor to pay his personal property tax and submit the documents evidencing that payment. Thus, in the circumstances presented in the *Commerce Bank* case, the court ruled that it could not "hold that the burden of assembling all of those items [the documents] is to be placed on the lienholder Bank." *Commerce Bank v. Chambers, supra* at 358. The Court will not normally require the creditor to insure payment of fees by the debtor where this imposes an unfair and statutorily unintended burden on the creditor. However, when all of the documents have been assembled and the tax money has been loaned along with the purchase price, there is no unfair burden placed upon the creditor to submit those documents and fees to the Motor Vehicle Division. Rather, it is action which must be properly expected of the creditor if he is to seek equitable redress from the Court.

The *Commerce Bank* case differs from the present case in yet another way. As previously noted, the creditor under Kansas law apparently could not submit the necessary documents to the proper state department without specific authority from the purchaser. Under Utah law, as explained in the affidavit of Irene Clark, the debtor or his agent is not required to submit the application and accompanying documents. In Utah, as was evident in the facts of *Humphries*, a creditor may submit the necessary documents and fees to obtain the issuance of a proper title certificate on its own.

■ A creditor cannot rely on the debtor to do for him what the creditor could easily do for himself and still expect to invoke the equitable exception to the perfection requirements of Utah Code Ann. §§ 41-1-80 *et seq.* If the creditor goes so far as to loan the debtor the personal property tax it had better go a step further and insure that the property tax is applied towards its proper purpose. This may seem a harsh result, but it is a logical and necessary limiting requirement which is in harmony with both *Commerce Bank* and *Humphries*. Without it, the exception would vitiate the statutory requirements. A strict standard of maximum effort on the part of the creditor in the particular circumstances of the case is required before the exception will be applied. The creditor must do all that he reasonably can do under the circumstances before he will be entitled to equitable relief.

A further factual and ultimately equitable difference is noted between the case of *In re Humphries, supra,* and the present case. In this case, there was not the persistence of contact that existed on the part

of the *Humphries* creditor. Two initial attempts at perfection were made in the few months after the loan was made, and then nothing was done until after the bankrupt ceased having the payments deducted directly from his paycheck. After being alerted to action, the creditor then made two more attempts to contact the bankrupt, once in March and once again in May, the month in which bankruptcy was filed. The creditor was not as diligent as it could or should have been. The diligence exhibited by the creditor in *Humphries* is necessary for application of the equitable exception to Utah Code Ann. §§ 41–1–80 *et seq.*

The equitable exception enunciated in *Humphries* and clarified today is a narrow exception to the statutory rule. By necessity, such relief must be limited to the creditors who do *all* that they reasonably can do under the circumstances, but who are unfairly deprived of perfection by an uncooperative debtor. The equitable nature of the remedy necessitates that consideration be given as well to the potential harm the particular situation presents for innocent third parties before any relief will be allowed. The *Humphries* decision creates an *exception*, and as such is not meant to replace or provide an alternative to the statutory method of perfection. It is meant only to provide relief when, under all of the circumstances, the statutory rule clearly creates an unjust result. The creditors in these cases are not left without a remedy. In *Alvillar*, the creditor may seek to have its debt declared nondischargeable on grounds of conversion of the tax money or on grounds of false pretenses. A complaint alleging nondischargeability of the debt has already been filed by the creditor in *Alvillar* which awaits a trial pending this decision. In *Solar Energy*, the bank may assert a cause of action against other defendants. The Court turns now to possible remedies left to First Security Bank in *In re Solar Energy Sales and Service, Inc.* since resolution of the equitable lien in the trustee's favor necessitates the reaching of these dependent issues.

### Liability: In re Solar Energy Sales and Service, Inc.

The cross-claims and third-party complaint made on behalf of the creditor, First Security Bank, were based on claims for reimbursement for any loss suffered if the lien on the car was held to be unperfected and thus void as against the trustee. Unrefuted evidence given at trial by William L. Anderson, an employee of the bank, showed the principal amount owed under the contract at that time to be $7,622.10. The claims against Mr. Lilly and Mr. Hess were specifically based on allegations of fraud, which prevented the bank from perfecting its lien, and on allegations of personal liability by these individuals on the contract. As stated earlier, a default judgment was entered against Mr. Lilly at trial.

As to the contention of fraud on the part of Mr. Hess, a thorough review of the evidence reveals that this claim is unfounded. No evidence of fraud or even uncooperativeness on the part of Mr. Hess was introduced. In fact, the only testimony given concerning any actual or attempted contact with Mr. Hess was in June of 1979 subsequent to the filing of bankruptcy by Solar Energy Sales and Service. No testimony was offered to show that any request was ever made of Mr. Hess either to deliver or endorse the incorrectly issued certificate of title. As there is no evidence supporting the allegations of fraud against Mr. Hess, the claim must be dismissed.

The bank's claim of personal liability by Mr. Hess on the contract is based on the fact that although Mr. Hess signed for and on behalf of "Solar Energy Marketing & Maint. Inc.," an alleged corporation, there was never a company incorporated under that name. As stated, although the company apparently tried to incorporate under the name of "Solar Energy Marketing & Maintenance, Inc.," incorporation under that name was not allowed by the State of Utah. Thus, there existed at the time of the signing of the contract by Mr. Hess no *de jure* corporation. The company was subsequently properly incorporated under the name of "Solar Energy Sales & Service,

Inc." which corporation took over the performance and benefits of the contract signed by Mr. Hess.

Although in the case of *Vincent Drug Company v. Utah State Tax Commission*, 17 Utah 2d 202, 407 P.2d 683 (1965), the possibility of a *de facto* corporation has been recognized by the Utah Supreme Court under the Model Business Corporations Act, adopted by Utah in Utah Code Ann. §§ 16–10–1 *et seq.*, it is not clear that the present situation would fit under the Utah court's rationale. There, the street addresses of incorporators and directors had not been included as required by Utah Code Ann. § 16–10–49, but such omission was held to be an "unintentional formal defect" which gave rise to a *de facto* corporation protecting its agents from personal liability despite the failure to create a *de jure* corporation. Whether the defect involved in this case would be viewed as being an "unintentional formal defect" by the Utah Supreme Court need not be reached as there exists an alternative ground for decision. For the same reason, this Court need not address the continued existence of a corporation by estoppel under the Business Corporations Act.

■ Resolution of the issue of personal liability is accomplished in this case by application of the principle of ratification. The general rule of ratification is stated in *Moses v. Archie McFarland & Son*, 119 Utah 602, 230 P.2d 571, 573 (1951), quoting from *Williston on Contracts*, Rev.Ed., Vol. I, at 805:

> Subsequent affirmance by a principal of a contract made on his behalf by one who had at the time neither actual nor apparent authority constitutes a ratification, which in general, is as effectual as original authorization, provided such affirmance and ratification are not against public policy. Not only is a contract formed between the principal and the third person, but the agent is absolved from liability for the loss which may happen because of his unauthorized action. Ratification like original authority need not be express. Any conduct which indicates assent by the purported principal to become a party to the transaction or which is justifiable only if there is ratification is sufficient.

■ In this case, the evidence establishes ratification on the part of the properly incorporated entity, Solar Energy Sales & Service, Inc. Although when the contract was made, it was made on behalf of a non-existent corporation, that organization's properly incorporated successor took over the benefits conferred under the contract and assumed performance of the obligations incurred under it as well. It was testified that the corporation, Solar Energy Sales & Service, Inc., owned and used the car as a company car and further made all of the payments on the car up to the filing of bankruptcy. The employees of the bank also testified that they knew they were dealing with a corporation on the contract and looked to that corporation for performance. Further, when the certificate of title was issued, although the creditor's lien was mistakenly left off, it was issued in the name of "Solar Energy Sales & Service, Inc.," the validly formed corporation. Ratification by conduct is clearly present, and as such, absolves Mr. Hess of any personal liability he may have originally incurred by signing on behalf of a non-existent corporation.

This conclusion is consistent with the course of dealing that existed between the parties. The corporation, Solar Energy Sales & Service, Inc., clearly communicated its ratification of the contract to the third party, First Security Bank, for the bank consistently looked to the corporation for performance, repeatedly affirming that it knew it was dealing with a corporation. There appears to have been no assertion that Mr. Hess was ever personally liable until the June, 1979, conversation held subsequent to the filing of bankruptcy by the corporation. Since the properly formed successor corporation, Solar Energy Sales & Service, Inc., ratified the contract signed by Mr. Hess as an agent for the non-existent corporation of Solar Energy Marketing & Maintenance, Inc., and since that ratifica-

tion was clearly communicated to the third party, First Security Bank, which thereafter accepted performance by the ratifying entity, the Court now holds that Mr. Hess has been absolved of any personal liability.

The cross-claim made by First Security Bank against the dealer, Dean Evans Chrysler-Plymouth, is based on alleged liability incurred under the Auto Dealer Reserve Agreement executed by Dean Evans on May 31, 1972. Although the copy of the agreement filed with the Court contains only the signature of Dean Evans, and no signature on behalf of First Security Bank, the validity of this agreement was never questioned by any party during the trial. As there would have been incentive to do so, it must be assumed that there exists a properly executed copy of the agreement. Therefore, as its validity remains uncontested, the agreement will be taken as binding between the parties.

Under paragraph 5 of the agreement entitled "Repurchase by Dealer," if the bank repossesses and offers to return the car to the dealer within 90 days after the maturity of the oldest unpaid installment due under the contract, the dealer must either accept the return and repurchase the car or allow the bank to resell the car and pay any deficiency. If repossession and return are not accomplished within the 90 days, then the dealer incurs no liability under this paragraph. However, if the bank is unable to repossess the car "by reason of . . . any judicial proceeding in which the car may be involved," then the dealer is liable despite the bank's failure to repossess and return the car within the 90 day period. Testimony showed that February 13, 1979, marked the date of the oldest unpaid installment due under the contract, and that the car was repossessed on April 24, 1979, and returned to Dean Evans on May 15, 1979, two days after the expiration of the 90 day period. The question then presented to the Court is whether, despite the bank's failure to repossess and return the car within 90 days after the maturity of the oldest unpaid installment due under the contract, Dean Evans is nevertheless liable under paragraph 5 of the Dealer Reserve Agreement because the bank was unable to repossess earlier by virtue of a "judicial proceeding" in which the car was involved.

Testimony revealed that the bank requested a disclaimer at the First Meeting of Creditors for the bankrupt, but was refused such by the trustee, presumably because the bank was not noted on the certificate of title as a perfected lienholder. The bank was, however, granted permission to repossess the vehicle, but was specifically instructed by the Court not to dispose of the vehicle. Considering the specific instruction of the Court not to dispose of the vehicle and the fact that the vehicle was under the jurisdiction of the bankruptcy court by virtue of the bankrupt's registered ownership of the vehicle, thus submitting any action for collection of the vehicle to the provisions of the automatic stay, Rule 401, Fed.R.Bankr.P., repossession of the car was prevented by a "judicial proceeding" as meant in paragraph 5 of the Dealer Reserve Agreement. Thus, the 90 day provision does not apply to absolve Dean Evans of liability.

It is true that there was also testimony that the delay in repossession was caused in part by a failure to locate the car, which was finally found out of state. However, the testimony shows that despite this delay in locating the vehicle, repossession occurred on April 24, 1979, 18 days before the expiration of the 90 day period. The only explanation offered for the added delay in returning the car to Dean Evans after repossession, a delay of 20 days, is that First Security Bank was afraid to dispose of the vehicle due to the order of the Court and its understanding of the constraints imposed upon its action by the jurisdiction of the bankruptcy court. It may have, in fact, been a violation of the automatic stay to return the car when it did. The testimony shows then that First Security Bank's failure to act sooner was a result of the restraints imposed on it by the judicial proceeding of bankruptcy so as to excuse its compliance with the 90 day repossession and return period. The hold harmless agree-

ment executed by Dean Evans on March 29, 1979, appears to have no bearing on the assessing of liability, but rather was executed in an attempt to aid First Security Bank in its repossession efforts which were thwarted in large part because the bank had no apparent legal claim to the vehicle.

There exists another basis for finding liability on the part of Dean Evans. By terms of paragraph 2 of the Dealer Reserve Agreement, Dean Evans covenanted to have delivered to the bank the legal certificate of title covering the car showing the bank as a lienholder on the car. As has been deduced from the evidence, Dean Evans failed, by its own error or inadvertence, to cause the recording of the bank's security interest on the certificate of title. This failure to perfect, and thereafter to correct such failure, constitutes a breach of the contract between the parties and subjects Dean Evans to liability for foreseeable damages arising from that breach. Those foreseeable damages include the loss occasioned by the obtaining of superior rights in the vehicle by a third party, such as the trustee, so as to defeat the claim of First Security Bank to the intended collateral. As previously stated, the evidence shows that the principal amount presently owing on the contract, which now stands as an unsecured debt due to the intervention of the trustee in bankruptcy, is $7,622.10. This breach on the part of Dean Evans also constitutes the primary reason that repossession and disposition of the vehicle was so difficult, for First Security Bank had no perfected legal claim to the vehicle upon which it could obtain a disclaimer from the trustee and which would have provided a basis for repossession readily recognizable in this or another state.

The Court is of the opinion that the remedy of damages for a material breach exists alongside the paragraph 5 repurchase remedy which serves only as additional protection to the bank in the narrow circumstances of default by the purchaser.

ORDER

IT IS NOW ORDERED:

1. That the lien of First Security Bank of Utah in the case of *In re Solar Energy Sales & Service, Inc.* be declared null and void and judgment be entered in favor of the trustee in bankruptcy.

2. That the claims made against Wilford Gene Hess in the third-party complaint be dismissed with prejudice, all issues having been decided in favor of third-party defendant Wilford Gene Hess.

3. That judgement be entered in favor of First Security Bank of Utah against Dean Evans Chrysler-Plymouth in the amount of $7,622.10.

4. That the lien of Utah State Employees Credit Union in the case of *In re Alvillar* be declared null and void and that the plaintiff-trustee's motion for summary judgment be granted.

5. Judgments shall be prepared consistent with the local rule and filed within ten days of the date of this order.