**In re TRIM–LEAN MEAT PRODUCTS, INC., a Delaware Corporation, Debtor.**

**ASSOCIATES COMMERCIAL CORPORATION, and Peterbilt of Baltimore, Plaintiffs/Appellants,**

**v.**

**TRIM–LEAN MEAT PRODUCTS, INC., Defendant/Appellee.**

Civ. A. No. 80–383.
Bankruptcy No. 79–234.
Adv. No. A–80–5.

United States District Court,
D. Delaware.

March 30, 1981.

Jeffrey M. Weiner, Bayard, Brill & Handelman, Wilmington, Del., Donald M. Harrison, Fellheimer, Eichen & Goodman, Philadelphia, Pa., for defendants/appellants Associates.

Robert Jacobs, Suzanne Curran Donovan, Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiffs/appellants Peterbilt.

Eduard F. vonWettberg, III, Daniel H. Krapf, Morris, James, Hitchens & Williams, Wilmington, Del., for Trustee, Beasley.

Henry A. Heiman, Wilmington, Del., for debtor, defendant/appellee.

Richard G. Elliott, Richards, Layton and Finger, Wilmington, Del., for Creditors Committee.

## OPINION

STAPLETON, District Judge:

This case arises out of an involuntary bankruptcy petition filed on October 3, 1979 by certain creditors of Trim-Lean Meat Products, Inc. ("Trim-Lean") in the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code. On that same date a trustee in bankruptcy was appointed for Trim-Lean. On November 8, 1979, an Order for relief was entered in this case.

Subsequently, Associates Commercial Corporation ("Associates") filed a complaint in the Bankruptcy Court seeking repossession of a 1979 Peterbilt truck tractor in which Associates claimed a security interest. On March 12, 1980, the trustee answered the complaint, asserting, *inter alia,* that Associates' interest was unperfected and inferior to that of the trustee. After holding a hearing on Associates' complaint and receiving memoranda of law from the parties, the Bankruptcy Judge filed a Memorandum Opinion and Order on July 7, 1980 which held that the trustee was entitled to the truck tractor. *In re Trim-Lean Meat Products, Inc.,* 5 B.R. 190 (Bkrtcy.D.Del. 1980). ("Bkcy.Op."). This decision is now before this Court on appeal by Associates pursuant to 28 U.S.C. § 1334. After the appeal was filed, Peterbilt of Baltimore ("Peterbilt"), the seller of the contested vehicle, was permitted to intervene.

Certain facts in this case are undisputed. On June 25, 1979, Trim-Lean purchased and took possession of the truck tractor from Peterbilt in Baltimore, Maryland. The purchase and sale were evidenced by a security agreement reserving a security interest in the vehicle to Peterbilt. Peterbilt then assigned to Associates all of its rights in the security agreement and the truck tractor itself. A "Manufacturer's Statement of Origin of Motor Vehicle" indicates that both the statement of origin and the truck tractor were transferred to Trim-Lean on June 25, 1979. The statement of origin noted that the vehicle was subject to a lien in favor of Associates created on that date.

At the time the truck was delivered to Trim-Lean it had "temporary" or "transporter" license tags which were valid only for the purpose of taking the truck from the place of purchase to the motor vehicle office in Delaware. Under Delaware law, a vehicle cannot be legally operated within the state without registration with the Department of Motor Vehicles. 21 Del.C. § 2101, *et seq.* In order to register a vehicle in Delaware, a certificate of title must be produced. *Id.* No certificate of title for the contested truck tractor was ever applied for or obtained, and thus the operation of the vehicle by Trim-Lean after the initial trip to Delaware was in contravention of Delaware law.

Under Delaware law, a security interest in a motor vehicle is perfected by the notation of such a lien on the vehicle's certificate of title in accordance with the applicable provisions of the Motor Vehicle Code. 6 Del.C. § 9–302(3) and (4). Trim-Lean failed to apply for or obtain a certificate of title for the truck tractor and Associates' security interest therefore remained unperfected at the time of Trim-Lean's bankruptcy. The failure to perfect a security interest may, of course, have disastrous consequences. Section 544 of the United States Bankruptcy Code confers upon a trustee in bankruptcy the rights of a lien creditor under state law, and Delaware law provides that a lien creditor has priority over the holder of an unperfected security interest. 6 Del.C. § 9–301(1)(b) and (3); *In re Copeland,* 531 F.2d 1195 (3d Cir. 1976).

In reaching its decision the bankruptcy court noted the undisputed testimony of Trim-Lean's President, Mr. Jan Berkowitz, that Trim-Lean signed all documents that it was requested to sign in connection with the transaction, and that Trim-Lean never received instructions from Associates or anyone else with respect to titling the vehicle or having Associates' security interest perfected. "Bkcy.Op." at 191. Consequently, the court below concluded that Associates had not done all that it could to achieve the perfection of its security interest and that, therefore, its claim of an equitable lien must be rejected.

Associates argued unsuccessfully below and now argues on appeal that it did all that it could reasonably do to achieve perfection. Accordingly, it maintains that either its security interest should be deemed perfected as against the trustee, or alternatively, an equitable lien in its favor should be recognized.[1] Associates points out that had Trim-Lean not violated Delaware law by failing to register the truck tractor,[2] a certificate of title noting Associates' lien would have been issued and its security interest would have been perfected. Appellant asserts that it should not be made to suffer for Trim-Lean's illegal operation of the contested truck tractor.

Additionally, Associates notes that the recognition of an equitable lien in circumstances such as these would be unlikely to prejudice innocent third parties. Absent fraud, Trim-Lean could not obtain a certificate of title without Associates' lien being noted thereon, and a potential purchaser or creditor would not act without seeing this certificate. In the absence of any likelihood of prejudice to third parties, Associates argues that an award of the truck tractor to the trustee would simply be a windfall to the unsecured creditors.

As noted above, Delaware law is explicit with respect to the requirements of perfecting a security interest in a motor vehicle. While the equitable lien doctrine has been held in this District to have survived the enactment of the Uniform Commercial Code ("UCC"), it has only been applied in situations where a secured creditor is prevented from perfecting its interest by an uncooperative debtor. *See In re Metal Cleaning and Processing, Inc.*, BK 77–49, pp. 7–8 (U.S.Bkcy.D.Del. 12/31/78). This construction of the doctrine is consistent with a number of cases, factually similar to the instant controversy, which have held that an unperfected security interest in a motor vehicle will be given priority over a trustee's claim only when the secured party has done everything reasonable under the circumstances to perfect its lien.[3] *See In re Littlejohn*, 519 F.2d 356, 359 (10th Cir. 1975); *In re Solar Energy Sales & Service, Inc.*, 4 B.R. 364, 373 (U.S.Bkrtcy.D.Utah 1980).

Given the controlling legal standard, it is clear that appellants are not entitled to equitable relief. Neither Associates nor Peterbilt made any significant effort[4] to follow up and see that the lien had been perfected. If either had contacted Trim-Lean and had discovered that no certificate of title reflecting the lien had been obtained, it would have been in a position to insist that the situation be remedied immediately. Trim-Lean had committed itself in ¶ C of the security agreement, "at its own cost and expense: to do everything necessary or expedient to perfect and preserve any security

1. Trim-Lean's claims that its security interest should be considered perfected and that it is entitled to an equitable lien in its favor, appear to rest on the same legal and factual foundation, and thus will be treated as a single argument.

2. There is no direct evidence in the record which demonstrates that the truck tractor was actually operated by Trim-Lean prior to its bankruptcy. In its briefing, however, appellant alleges that the truck was illegally operated, and Trim-Lean does not deny this allegation. Moreover, it is logical to assume that Trim-Lean purchased the vehicle for normal commercial use, and more than three months expired between the date of purchase and the subsequent bankruptcy.

3. The failure of a secured party to satisfy this responsibility may, in some sense, create a "windfall" for unsecured creditors, but this is plainly the result that the drafters of the UCC intended. *See In re Dennis Mitchell Industries, Inc.*, 419 F.2d 349 (3d Cir. 1969).

4. Although Associates employs personnel whose job is to contact its customers and determine why a vehicle has not been titled, no evidence of such efforts was presented in this case. Transcript of bankruptcy hearing ("Tr.") pp. 8–10. Mr. Roach, the collection manager for Associates, testified that he spoke on the telephone with Mr. Sam Berkowitz, an employee of Trim-Lean, "primarily" about payments that were due Associates under the security agreement. Tr. at pp. 10–11. Mr. Roach did not testify to any conversations with Mr. Berkowitz regarding other aspects of the security agreement. Mr. Roach's testimony appears to relate the total efforts made by Associates and Peterbilt to have Trim-Lean title the truck tractor.

interest of" the seller. That agreement also provided for judicial and extra-judicial remedies in the event of Trim-Lean's default on such a commitment, including repossession of the vehicle and foreclosure of the lien. Peterbilt or Associates were thus in a position to make a demand upon Trim-Lean with a reasonable expectation of securing prompt compliance.

Requiring one in Peterbilt's or Associates' position at least to make a demand upon the buyer does not impose any significant burden on the lienholder and can be expected in a significant number of cases to accomplish one of the primary goals of the UCC— prompt registration of security interests on a public record.[5] In many instances the problem will lie not in an obdurate buyer but rather with an uninformed or procrastinating one. Indeed, this was such a case. The Bankruptcy Judge found as a fact that Trim-Lean was not an uncooperative debtor, and, accordingly, there is every reason to believe that a demand by Peterbilt or Associates would have resulted in prompt perfection of the security interest.

Peterbilt also argues on appeal that the trustee is not entitled to the truck tractor because Trim-Lean obtained the vehicle through fraud. It contends that an inference of fraudulent intent on Trim-Lean's part can be drawn from its unjustified and illegal failure to take any steps to comply with ¶ C by registering the truck tractor. This allegation is based on the representations contained in ¶ C of the security agreement, the pertinent part of which was quoted at pages 335–336, *supra*.

■ This argument is a simple *non sequitur.* Trim-Lean's failure to perform its obligation to perfect under the security agreement does not imply that it had deceived Peterbilt into contracting with it. Stand-

ing by itself, "a mere failure to perform [a contractual obligation] is as consistent with an honest intent as with a dishonest one." *Murphy v. T.B. O'Toole, Inc.,* 8 Terry 99, 87 A.2d 637, 638 (Del.Super.1952); *see Murphy v. Godwin,* 303 A.2d 668 (Del.Super.1973). Peterbilt has suggested no additional circumstance that would permit me to infer fraudulent intent in this case.

In summary, I have concluded that the application of the equitable lien doctrine would be inappropriate in this case, and that Trim-Lean has not been shown to have acquired the contested truck tractor by fraud. Therefore, the bankruptcy court's judgment is affirmed.

---

5. With the few exceptions specified in § 9–302, the UCC requires that perfection of a security interest be accomplished through *public* notice. This requirement reflects the drafters' view that a public filing by the creditor is the surest and most efficient way of informing interested parties of the existence of security interests in the various goods covered by the Code. The indication of a creditor's lien on a certificate of title is simply another form of public notification. Consequently, permitting Associates to in effect perfect its lien by noting it on the manufacturer's statement of origin would conflict with the UCC's clearly stated preference for public notification as a precondition for perfection. *See* White & Summers, *Uniform Commercial Code* (2nd ed. 1972) § 23–5.