**In re Tina L. CARPENTER, Debtor/Appellant.**

**Wal–Mart Stores, Inc., Plaintiff/Appellee,**

v.

**Tina L. Carpenter, Defendant/Appellant.**

**No. A. 2:00CV143.**

United States District Court, E.D. Virginia. Norfolk Division

Sept. 19, 2000.

Carolyn L. Camardo, Marcus, Santoro & Kozak, Portsmouth, VA, for Appellant.

Lori D. Thompson, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Appellee.

Debera F. Conlon, Office of U.S. Trustee, Norfolk, VA, for U.S. Trustee.

### OPINION AND FINAL ORDER

SMITH, District Judge.

This matter is before the court on Debtor Tina L. Carpenter's appeal, pursuant to 28 U.S.C.A. § 158(a) (West Supp.2000), from the Amended Memorandum Opinion and Order of the United States Bankruptcy Court for the Eastern District of Virginia, filed January 19, 2000.[1] The bankruptcy court declared that Wal–Mart

---

1. The bankruptcy court originally issued a

Memorandum Opinion and Order on Decem-

Stores, Incorporated has a secured, equitable lien in the proceeds of Carpenter's recovery from a personal injury lawsuit and ordered Carpenter to pay to Wal-Mart the amount of the proceeds that she had retained from the settlement with the third-party tortfeasor, plus accrued interest, in order to satisfy the lien. For the reasons set forth below, the decision of the bankruptcy court is **AFFIRMED.**

### I. Factual and Procedural History

The bankruptcy court decided the case on the basis of the parties' stipulated facts[2] and testimony taken in the proceedings before the court. Except as otherwise noted, the facts are not in dispute.

Carpenter was an employee of Wal-Mart. As an employee, Carpenter participated in the Wal-Mart Group Health Plan (the "Plan"), a self-funded, self-insured health benefits plan that is governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001–1461 (West 1999 & Supp.2000). Under the terms of the Plan, a participant may receive benefits to cover treatment for injuries caused by a third party, but if the Plan pays benefits under such circumstances, the Plan retains the right of subrogation to the participant's claims against the third party and, in the event of the participant's recovery from the third party, the right to reimbursement for such recoveries. The rights of subrogation and reimbursement are unaffected by the man-

ner in which the payments are designated or whether the participant is fully compensated for her injuries.

On November 13, 1994, Carpenter was injured in a car accident caused by the negligence of a third party. Carpenter requested benefits under the Plan. She signed an acknowledgment of Wal-Mart's rights under the Plan on July 6, 1995. In total, Wal-Mart paid Carpenter benefits under the Plan in the amount of $106,-935.11. Carpenter incurred nearly $300,000 in medical expenses related to the accident. On September 1, 1998, Carpenter filed a voluntary Chapter 7 bankruptcy petition to discharge her debts.

On October 13, 1998, Carpenter recovered a settlement in the amount of $125,000 from the third-party tortfeasor.[3] After paying attorney's fees and costs, she retained approximately $83,000 of the settlement amount. Carpenter subsequently amended her bankruptcy schedules to disclose this recovery but claimed that the settlement proceeds were exempt pursuant to Virginia law, as incorporated into federal bankruptcy law. *See* 11 U.S.C.A. § 522(b)(2) (West 1993 & Supp.2000) (allowing states to opt out of federal exemptions and provide their own); Va.Code Ann. § 34-3.1 (Michie 1996) (providing that federal exemptions are not available in Virginia); Va.Code Ann. § 34-28.1 (Michie 1996) (providing an exemption in Virginia for personal injury proceeds).

Wal-Mart filed a complaint in the bankruptcy court on November 25, 1998, seek-

---

ber 22, 1999. In response to Carpenter's motion for rehearing or new trial, which the court denied, the court amended its opinion to correct clerical errors and for clarification. The court subsequently issued an Amended Memorandum Opinion and Order, which is the subject of this appeal.

2. The parties entered a written "Stipulation of Facts" and filed it with the bankruptcy court on June 15, 1999. This stipulation is binding on the parties. *See infra* note 3.

3. The parties' "Stipulation of Facts" states that Carpenter recovered the settlement from

the third-party tortfeasor. In her brief before this court, Carpenter asserts for the first time that she recovered the settlement under her uninsured motorists coverage and has never been able to recover anything from the third-party tortfeasor. Carpenter is bound, however, by the stipulation of facts that the parties filed with the bankruptcy court. *See Richardson v. Director, Office of Workers' Compensation Programs,* 94 F.3d 164, 167 (4th Cir. 1996); *supra* note 2.

ing a declaratory judgment that it had an equitable lien on the settlement proceeds under the terms of the Plan and requesting that the bankruptcy court order Carpenter to pay to Wal–Mart the proceeds up to the amount that Carpenter had received under the Plan. The court ruled in favor of Wal–Mart, and Carpenter now appeals.

On appeal, the district court reviews findings of fact made by the bankruptcy court for clear error. *See Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992). Conclusions of law are reviewed *de novo. See id.*

## II. Analysis

Relying on *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the bankruptcy court first ruled that Virginia's anti-subrogation law, *see* Va.Code Ann. § 38.2–3405 (Michie 1999), is preempted by ERISA and that the subrogation and reimbursement clause of the Plan is therefore enforceable. When state law is preempted by ERISA, federal courts are directed "to develop a federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotation marks omitted); *see Phoenix Mut. Life Ins. Co. v. Adams,* 30 F.3d 554, 562 (4th Cir.1994) ("When ERISA fails to address an issue and the state law governing that issue has been preempted, the Supreme Court and the Fourth Circuit have authorized federal courts to develop federal common law of rights and obligations under ERISA-regulated plans."). The Fourth Circuit has stated that courts should "fashion only those [federal common law] remedies that are appropriate and necessary to effectuate the purposes of ERISA." *Adams,* 30 F.3d at 563 (internal quotation marks omitted). Additionally, the Fourth Circuit

has warned that "the resort to federal common law generally is inappropriate when its application would: (1) conflict with the statutory provisions of ERISA; (2) discourage employers from implementing plans governed by ERISA; or (3) threaten to override the explicit terms of an established ERISA benefit plan." *Id.* at 563 n. 21.

Having concluded that the subrogation and reimbursement clause of the Plan is enforceable, and observing that ERISA is silent with respect to subrogation, the bankruptcy court determined that it would be appropriate under the circumstances of this case to fashion federal common law in order to provide an enforcement mechanism for the subrogation clause. *See id.* at 562–65 (adopting substantial compliance doctrine as federal common law where ERISA preempted state common law and was silent regarding change of beneficiary); *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 990 (4th Cir.1990) (observing that the court "must ... focus on common law remedies because ERISA does not provide an explicit remedy for [the plan administrator]"). To this end, the bankruptcy court recognized an equitable lien in favor of Wal–Mart on Carpenter's recovery from the third-party tortfeasor.

The bankruptcy court's determination that the recognition of an equitable lien provides an appropriate mechanism to enforce the subrogation and reimbursement clause in the Plan is supported by *Waller. Waller* involved an ERISA plan that contained an "Acts of Third Parties" clause, which allowed for an advance of payment for medical expenses to a participant in case of injuries caused by a third person, provided the participant agreed to reimburse the plan from any judgment or settlement obtained from the third party. *See Waller,* 906 F.2d at 986. Waller was injured in an automobile accident caused by a third party and, at Waller's request,

the insurance company that administered the plan advanced her medical expenses. The insurer failed, however, to obtain a signed repayment agreement, as required under the plan. *See id.* Waller subsequently obtained a recovery from the third party, and the insurer brought suit after Waller refused to reimburse the plan. *See id.* at 986–87. Because the insurer had not complied with the plan's requirements, it sought recovery under the theory of unjust enrichment. The Fourth Circuit held that it was appropriate under the circumstances to adopt the theory of unjust enrichment as federal common law because the remedy "would further the contract between the parties and effectuate the clear intent of [the insurer's] 'Acts of Third Parties' clause." *Id.* at 993 (emphasis omitted). Additionally, the court observed that even though it was probably not the case that the payment to Waller was mistakenly advanced, "the remedy is in accord with the statutory provision in ERISA that allows for the return of mistakenly paid contributions made by employers to multiemployer plan funds," because that provision "indicates a desire to ensure that plan funds are administered equitably and that no one party, not even plan beneficiaries, should unjustly profit." *Id.* (citing 29 U.S.C. § 1103(c)(2)(A)). Thus, recognition of unjust enrichment "further[ed] the purposes of ERISA." *Id.*

■ It is similarly appropriate here to recognize an equitable lien as a matter of federal common law, because recognition

of the lien furthers both the contract between the parties and the purposes of ERISA. In addition to being "appropriate and necessary to effectuate the purposes of ERISA," *Adams,* 30 F.3d at 563 (internal quotation marks omitted), recognition of an equitable lien in this case does not pose any of the problems identified by the Fourth Circuit in *Adams.* As the bankruptcy court observed, recognition of the lien would not conflict with the statutory provisions of ERISA, because ERISA is silent with respect to subrogation provisions. *See Ryan by Capria–Ryan v. Federal Express Corp.,* 78 F.3d 123, 127 (3d Cir.1996). Employers would not be discouraged from implementing ERISA plans; on the contrary, the ability to enforce subrogation provisions would encourage employers to implement these plans. Finally, an equitable lien is consistent with the explicit terms of the Plan, because, as discussed below, the parties agreed that any recovery by Carpenter from a third-party tortfeasor would impose a duty on her to reimburse the Plan.[4]

In her appeal, Carpenter argues that the bankruptcy court erred: (1) in determining that Wal–Mart provided sufficient proof to justify recognition of an equitable lien; and (2) in determining that Wal–Mart's lien could not be avoided, pursuant to 11 U.S.C.A. § 522(f)(1)(A) (West Supp.2000), as a judicial lien that impairs an exemption.[5] The court rejects these arguments for the reasons given below.

### A. Existence of an Equitable Lien

■ An equitable lien may be imposed on specific property when there is

---

4. Although the court has not had the benefit of reviewing the Plan itself—as it would have preferred to do—the parties agreed to the contents of the key provisions in their "Stipulation of Facts." *See supra* note 2. The bankruptcy court declined to allow Carpenter on her motion for a new trial to introduce the Plan itself, because the court had determined it had sufficient evidence to make a decision. *See Wal–Mart Stores, Inc. v. Carpenter (In re Carpenter),* 245 B.R. 39, (Bankr.E.D.Va. 2000) (unpublished order). While this court agrees that the bankruptcy court acted correctly, it still would have preferred to review the Plan

itself on appeal but cannot do so because the Plan is not part of the record.

5. In addition to these specific challenges, Carpenter asserts generally that recognizing an equitable lien in order to effectuate the purposes of ERISA and allowing the lien to prevent her exemption of the proceeds effectively allows ERISA to preempt bankruptcy law. The court finds, however, that recognizing an equitable lien in favor of Wal–Mart both effectuates the purposes of ERISA and is consistent with bankruptcy law.

"(1) a debt, duty or obligation between the parties; (2) specific property or res to which the debt or obligation attaches; and (3) an intent, express or implied, that the property serve as security for the payment or obligation." *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1319 (4th Cir.1996) (stating South Carolina law); *see Klesch & Co. v. Nauru Phosphate Royalties (Honolulu), Inc. (In re "Ronfin" Series C Bonds Sec. Interest Litig.)*, 182 F.3d 366, 371 (5th Cir.1999) (requiring, *inter alia*, "an express or implied agreement between the parties demonstrating a clear intent to create a security interest in order to secure an obligation between them"); *Avco Delta Corp. Can. v. United States*, 484 F.2d 692, 703 (7th Cir. 1973) ("The essential elements of equitable liens include (1) a debt, duty or obligation owing by one person to another, and (2) a res to which that obligation fastens, which can be identified or described with reasonable certainty." (internal quotation marks omitted)); *see also* 51 Am.Jur.2d *Liens* § 25 (1970) (stating that "[a]n equitable lien may be created by an express contract which shows an intention to charge some particular property with a debt or obligation").

Carpenter argues that Wal–Mart failed to present sufficient proof of its entitlement to an equitable lien in the proceeds. Carpenter claims that, at most, Wal–Mart proved only a breach of contract for an unsecured debt. The court finds, however, that Wal–Mart presented sufficient evidence to support the inference that the parties intended to charge the proceeds with a lien in favor of Wal–Mart. *Cf. Cleveland Chair Co. v. United States*, 214 Ct.Cl. 360, 557 F.2d 244, 246 (1977) (observing that a security agreement can be implied from the facts, if "the consensual element needed to find a contract implied in fact" is present).

The terms of the Plan provided that Wal–Mart had the right to subrogation and reimbursement in the event that Carpenter obtained a recovery from the third-party tortfeasor. Moreover, the Plan specifically stated that Wal–Mart's right to reimbursement would not be affected by the possibility that Carpenter recovered less than was necessary to fully compensate her for her injuries. Carpenter acknowledged Wal–Mart's rights under the Plan by signing an acknowledgment form.

In view of these facts, this court agrees with the bankruptcy court that the parties intended that Wal–Mart should have a lien on the settlement proceeds. With her acknowledgment of Wal–Mart's rights and her acceptance of benefits under the Plan, Carpenter evidenced her assent that any proceeds she obtained from the third-party tortfeasor would be charged with an obligation to repay Wal–Mart for any benefits she received.

Other courts have held accordingly. *Collins v. Blue Cross of Virginia*, 213 Va. 540, 193 S.E.2d 782 (1973), concerned an action initiated by Blue Cross to recover payments it had made to Collins for her medical expenses after she was injured in an automobile accident. *See Collins*, 193 S.E.2d at 783–84. Blue Cross had contracted with Collins's employer to provide medical benefits for its employees, and the group contract had a subrogation provision. *See id.* at 783–84 & n. 1. Blue Cross relied on this subrogation provision to assert a lien against the recovery that Collins obtained from the third-party tortfeasor after she had obtained medical benefits under the group health plan. *See id.* at 784. The Supreme Court of Virginia held that "the effect of the subrogation provision was to impress upon any subsequent recovery by the participant ... an equitable lien for amounts advanced for her ben-

efit under the contract."[6]  *Id.* at 785;  *see also Miller v. Liberty Mut. Fire Ins. Co.,* 48 Misc.2d 102, 264 N.Y.S.2d 319, 323 (N.Y.Sup.Ct.1965) (holding on similar facts that a subrogation provision in an insurance contract gave rise to an equitable lien in favor of the insurer on the recovery by the insured from a third-party tortfeasor).

In addition, this court relies for its conclusion on cases addressing situations that the court finds analogous. In *Avco Delta Corp. Canada v. United States,* for example, the Seventh Circuit, applying Illinois law, held that several subcontractors who failed to comply with a lien statute could nevertheless obtain an equitable lien against a retainage fund held by the owner. *See* 484 F.2d at 703. The contract between the owner and the general contractor provided that the owner would retain 10% of all invoices submitted by the contractor and that a precondition of payment to the contractor of this retainage was the owner's receipt of an affidavit stating that, *inter alia,* the subcontractors had been paid. *See id.* at 694–95. The Seventh Circuit reasoned that the retainage provision, although in part intended to protect the owner against actions brought against it by unpaid subcontractors, also must have been substantially for the benefit of the subcontractors. *See id.* at 701–03. The court thus concluded that the retainage provisions gave rise to a duty running from the owner to the subcontractors, and that the retainage fund was the res to which that duty attached. *See id.* at 703. Accordingly, the court found that the elements for an equitable lien had been established.

In *General Motors Acceptance Corp. v. Jones (In re Czebotar),* 5 B.R. 379 (Bankr.

E.D.Wash.1980), General Motors Acceptance Corporation ("GMAC") had a security interest in a truck that was purchased by Czebotar. *See Czebotar,* 5 B.R. at 380. The contract creating the security interest provided that Czebotar would maintain adequate insurance on the truck for the duration of the contract. *See id.* The truck was damaged in an accident, and Czebotar subsequently filed a petition in bankruptcy. *See id.* The insurance company of the third party responsible for the accident paid for damages to the truck, and GMAC filed a complaint seeking to force the bankruptcy trustee to pay from the insurance proceeds the unpaid balance due GMAC under its contract with Czebotar. *See id.* Although the bankruptcy court found that GMAC did not have a security interest in the insurance proceeds under the Uniform Commercial Code, the court determined that GMAC did, however, have an equitable lien in the proceeds. *See id.* at 381. The court's primary rationale was that the parties agreed in a written contract that Czebotar would maintain an insurance policy on the truck for as long as there remained an unpaid balance, and there was no other reason for such a provision in the contract except to protect GMAC in case the original collateral—the truck—was destroyed. Thus, the court concluded that the parties intended that the insurance proceeds would secure the debt and concluded that an equitable lien should be imposed to enforce the parties' agreement. *See id.* at 381–82.

In this case, as in the cases described above, the parties' agreement clearly evidences an intent that the res—here, the recovery from the third-party tortfeasor—should be used to reimburse the Plan. The

---

6. Although the holding of *Collins* was superseded by passage of Virginia's anti-subrogation law, *see* Va.Code Ann. § 38.2–3405; *Reynolds Metals Co. v. Smith,* 218 Va. 881, 241 S.E.2d 794, 796 (1978) (stating that the statute was enacted to reverse the holding of *Collins* that a subrogation provision in a hospital indemnity contract is not invalid as against public policy), the rationale is still persuasive in the context of creating federal common law after state law has been preempted. *See Adams,* 30 F.3d at 564 (stating that "federal courts may draw on state common law in shaping the applicable body of federal common law").

only reason for the subrogation and reimbursement clause was to ensure that any subsequent recovery by a participant would be paid to the Plan.

Carpenter asserts that the equities here do not justify recognition of a lien. She asserts that *Collins* is distinguishable because Collins fully recovered her medical expenses, while Carpenter did not. This distinction is irrelevant, however, because the subrogation and reimbursement clause in the Plan—which Carpenter acknowledged—specifically states that Wal–Mart's rights are unaffected by whether Carpenter is fully compensated for her injuries. Moreover, Carpenter attempts to cast the equities as involving Wal–Mart, which she observes is a solvent party, against herself, who is insolvent. The equitable lien is for the benefit of the Plan administered by Wal–Mart, however, not Wal–Mart as a corporation. The Plan provides benefits to all its participants. If Carpenter were allowed to retain the proceeds,[7] other Wal–Mart employees would be disadvantaged to the extent that funds in the Plan were diminished. It is not inequitable to enforce the terms of the Plan when the debtor has acknowledged those terms; doing so protects the beneficiaries of the Plan as a class, and doing so furthers the purposes of ERISA. *See Waller*, 906 F.2d at 993 (explaining that it would be inconsistent with ERISA to allow a plan beneficiary to unjustly profit by failing to enforce a contract provision requiring reimbursement). In summary, the bankruptcy court did not err in declaring that Wal–Mart has an equitable lien on the settlement proceeds received by Carpenter from the third-party tortfeasor.

*B. Avoidance of the Lien in Bankruptcy*

Carpenter argues that, even if Wal–Mart obtained a lien on her settlement proceeds, the proceeds are exempt under Virginia law, as incorporated into federal bankruptcy law. She further argues that Wal–Mart's lien is a judicial lien that impairs her exemption and is therefore avoidable in bankruptcy. Carpenter's arguments fail on both counts for the same reason: Wal–Mart's equitable lien is a security interest.

■ The Bankruptcy Code permits the debtor to exempt certain property from the bankruptcy estate. *See* 11 U.S.C.A. § 522(b). Although federal law provides a list of property that the debtor may exempt, a state may opt out of the federal scheme and provide its own list of exempt property; Virginia has done so. *See id.*; Va.Code Ann. § 34–3.1. In particular, under Virginia law, "all causes of action for personal injury or wrongful death and the proceeds derived from court award or settlement shall be exempt from creditor process against the injured person." Va.Code Ann. § 34–28.1. The term "creditor process" is defined as "all methods used by creditors to collect *unsecured* debts." Va. Code Ann. § 34–1 (Michie 1996) (emphasis added).

■ According to the terms of the Virginia statute creating the exemption, Carpenter may not exempt the settlement proceeds with respect to Wal–Mart, because Wal–Mart is a secured creditor. An equitable lien grants the recipient a security interest in the res to which the lien attaches. *See Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 263, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999); Douglas Laycock, *The Scope and Significance of Restitution*, 67 Tex.L.Rev. 1277, 1290, 1292 (1989).

Contrary to Carpenter's assertions, the result the court reaches here is not inconsistent with the Virginia statute. Accord-

7. As the bankruptcy court observed, allowing Carpenter to retain the proceeds would, under the terms of the Plan, provide her a double recovery.

ing to the scant legislative history behind the statute:

> "The joint subcommittee decided that the Commonwealth's policy ... should reflect the intent of § 8.01–26 (prohibiting the assignment of personal rights of action) and the premise of personal injury awards which is to return the injured party to his pre-injury status. Under current law [the law prior to enactment of § 34–28.1], ... a creditor may have a right to the personal injury award compensating a debtor for the loss of his hand even where the creditor has no right to levy on the hand. The joint subcommittee's recommendation, therefore establishes a statutory exemption for all causes of action for personal injury and the proceeds derived from any court award or settlement."

*In re Webb*, 210 B.R. 266, 271 (Bankr. E.D.Va.) (quoting Report of the Joint Subcommittee Studying Virginia's Exemption Statutes, House Doc. No. 77, at 10–11 (1990)), *aff'd sub nom. King v. Webb (In re Webb)*, 214 B.R. 553 (E.D.Va.1997). This excerpt, together with the fact that the statute specifically applies to exempt proceeds only with regard to *unsecured* creditors, suggests that legislators were concerned that creditors who otherwise had no interest in the proceeds might attach the proceeds to satisfy unrelated debts. That is not the case here. Carpenter agreed as a condition to receiving benefits under the Plan that she would repay Wal–Mart any proceeds she was able to obtain from the third-party tortfeasor. The Plan functioned to provide an advance to Carpenter in order to pay her medical bills, and the lien serves to reimburse the Plan for this advance, as provided for by the Plan's terms and as agreed to by Carpenter. *See Collins*, 193 S.E.2d at 784–85

(holding that the purpose of an insurance contract containing a subrogation provision was indemnity). This is not a case where an unsecured creditor is able to obtain proceeds intended to compensate a debtor for personal injuries in order to satisfy another debt, for example, an unpaid credit card balance.

■ Similarly, because Wal–Mart has a security interest in the proceeds, Carpenter cannot avoid Wal–Mart's lien. The Bankruptcy Code allows the debtor to "avoid the fixing of a [judicial] lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b) ]." 11 U.S.C.A. § 522(f)(1)(A). Under the Bankruptcy Code, a "judicial lien" is a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C.A. § 101(36) (West 1993). "Judicial lien" has also been defined in case law as "an interest which encumbers a specific piece of property granted to a judgment creditor who was previously free to attach any property of the debtor's to satisfy his interest but who did not have an interest in a specific piece of property before the occurrence of some judicial action." *Boyd v. Robinson (In re Boyd)*, 31 B.R. 591, 594 (D.Minn.1983), *aff'd*, 741 F.2d 1112 (8th Cir.1984); *see In re Fischer*, 129 B.R. 285, 286 (Bankr.M.D.Fla.1991) (same).

■ A judicial lien is to be contrasted to a "security interest," which the Code defines as a lien "created by an agreement." 11 U.S.C.A. § 101(51) (West 1993). Only a judicial lien can be avoided by the debtor under § 522(f)(1). *See id.* § 522(f)(1); *Boyd*, 741 F.2d at 1113. Whether a lien is a judicial lien or a security interest[8] is determined by the method

---

**8.** The Bankruptcy Code defines three types of liens. *See* S.Rep. No. 95–989, at 25 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5811 (stating that the judicial lien is "one of three kinds of liens"). In addition to the judicial lien and the security interest, the Bankruptcy Code recognizes a "statutory lien," which is defined in relevant part as a lien "arising

of creation of the lien, rather than by the method of its enforcement. *See Naqvi v. Fisher,* 192 B.R. 591, 595–96 (D.N.H.1995); *In re Dunn,* 109 B.R. 865, 871 (Bankr. N.D.Ind.1988); *Wicks v. Wicks,* 26 B.R. 769, 771 (Bankr.D.Minn.1982), *aff'd sub nom. Boyd v. Robinson (In re Boyd),* 31 B.R. 591 (D.Minn.1983). Thus, the fact that a creditor seeks judicial action in order to have its lien recognized or enforced does not make the lien a judicial lien; the determinative inquiry is whether the parties agreed to the creation of a lien. *See Naqvi,* 192 B.R. at 595–96; *Dunn,* 109 B.R. at 872–73; *Wicks,* 26 B.R. at 771.

The bankruptcy court did not create the lien in this case, it recognized the existence of a consensual lien that previously existed by agreement of the parties. As discussed above, the parties, through the subrogation and reimbursement clause of the Plan and Carpenter's signed acknowledgment of Wal–Mart's rights under the Plan, created a lien by agreement. Thus, the equitable lien on behalf of Wal–Mart is a security interest, not a judicial lien. *See Dunn,* 109

B.R. at 871 ("The term security interest should be construed liberally to include all liens created by agreement.…" (internal quotation marks omitted)). Moreover, pursuant to the subrogation and reimbursement clause, Wal–Mart had an interest in a specific res—the recoveries of the participant from a third-party, i.e., the settlement proceeds—from the time that Carpenter received benefits under the Plan; this fact also supports the finding that the lien is not a judicial lien. *See Boyd,* 31 B.R. at 594 (excluding from "judicial lien" the situation where the creditor had an interest in the res prior to judicial action). Because Wal–Mart's lien is not a judicial lien, Carpenter may not avoid it under § 522(f)(1).[9]

Because Wal–Mart has a security interest in the proceeds Carpenter received from the third-party tortfeasor, in the form of an equitable lien created by agreement, the proceeds are not exempt under Va.Code Ann. § 34–28.1 and 11 U.S.C.A. § 522(b), and the lien is not a judicial lien subject to avoidance under 11 U.S.C.A. § 522(f)(1).[10]

solely by force of a statute on specified circumstances or conditions, … but does not include security interest or judicial lien." 11 U.S.C.A. § 101(53) (West 1993). The interest at issue here is clearly not a statutory lien. Thus, Wal–Mart's lien must be either a judicial lien or a security interest. *See* S.Rep. No. 95–989, at 25 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5811 ("In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens."); *In re Dunn,* 109 B.R. 865, 870 (Bankr.N.D.Ind.1988) (stating that " 'security interest' and 'judicial lien' are mutually exclusive concepts").

**9.** Carpenter cites *Pederson v. Stedman (In re Pederson),* 78 B.R. 264 (9th Cir. BAP 1987), *aff'd,* 875 F.2d 781 (9th Cir.1989), and the dissent in *Boyd v. Robinson* in support of her assertion that Wal–Mart's lien is an avoidable judicial lien. *See Pederson,* 78 B.R. at 267; *Boyd,* 741 F.2d at 1115–16 (Ross, J., dissenting). However, these opinions are not inconsistent with the analysis given above, nor do they support a finding that Wal–Mart's lien is

a judicial lien. The lien at issue in *Pederson* —created by a divorce decree—was clearly not created by agreement of the parties. *See Pederson,* 78 B.R. at 265. In *Boyd,* the majority affirmed the district court's finding that the lien at issue could not be avoided, but while the district court had based its conclusion on both its determination that the lien was not a judicial lien and its finding that the lien did not impair an interest of the debtor, the appellate court held only that the lien had not attached to an interest of the debtor and did not reach the issue of whether the lien was a judicial lien. *See Boyd,* 741 F.2d at 1113–14. In addition to disagreeing with the majority's holding, Judge Ross, writing in dissent, disagreed with the district court's finding that the lien was not a judicial lien; in contrast to the district court, Judge Ross concluded that the lien was created by a court in a divorce decree, not by a contractual agreement between the parties. *See id.* at 1115–16 (Ross, J., dissenting).

**10.** In so ruling, the court does not make a finding of unjust enrichment. Rather, the decision is based on the creation of an equitable lien by agreement between the parties.

*III. Conclusion*

The court **AFFIRMS** the bankruptcy court's declaration that Wal–Mart has an equitable lien in the settlement proceeds and **AFFIRMS** the order directing Carpenter to pay to Wal–Mart the amount of the proceeds that she has retained, plus accrued interest.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to all counsel of record and to the United States Bankruptcy Court for the Eastern District of Virginia.

It is so **ORDERED**.